IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

OSCAR DOUGLAS NELSON, JR.,
      Petitioner,

vs.                                                    Case No. 5:09cv218/RS/EMT

FLORIDA PAROLE COMMISSION, et al.,
      Respondents.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  The Florida Parole Commission ("Parole Commission") filed an answer and relevant portions of the state court record (doc. 15).  Petitioner filed a reply (doc. 19).[1]

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 15, exhibits).[2]  Petitioner's history with the Parole Commission began with

---

[1] The Secretary of the Florida Department of Corrections, the other named Respondent in this case, filed a limited response to the petition asserting that although the Secretary is properly named as a nominal party because he has physical custody of Petitioner, the Parole Commission is the proper party to respond to the merits of the petition, because Petitioner challenges the Parole Commission's decision to revoke his parole (doc. 17).  Petitioner accepts the Secretary's limited response (*see* doc. 20).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with the Parole Commission's answer (doc. 15).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

his commitment to the Florida Department of Corrections ("FDOC") for robbery in 1972 (Ex. A). He was sentenced to life in prison (*id.*).  Petitioner's first grant of parole was on July 31, 1979, subject to terms and conditions of parole for life (Ex. B at 30–31).  On July 10, 1991, the Parole Commission issued an order finding Petitioner guilty of violating the terms and conditions of his parole, but the Commission restored him to supervision (*id.* at 32).  On July 7, 1993, the Parole Commission issued an order finding Petitioner guilty of violating the terms and conditions of his parole and revoked his parole (*id.* at 34).  Petitioner was ordered into the custody of the FDOC (*id.* at 34–36).

On August 14, 2001, Petitioner was released on parole subject to terms and conditions of parole for life (Ex. B at 37–38).  On August 23, 2007, the Parole Commission issued a Warrant for Retaking Parole Releasee, based upon Petitioner's arrest for battery-domestic violence (Ex. C at 40–43).  On August 29, 2007, Petitioner was served with a Notice of Preliminary Hearing, advising him that he was charged with violating the conditions of his parole as follows:

> Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Parole, in that on or about August 15, 2007, in Hillsborough County, Florida, he did unlawfully touch, strike or cause bodily harm to Danielle Yvonne Flowers, against the will of said victim.

(Ex. D at 47–48).  A preliminary hearing was held on October 26, 2007 (*see id.* at 52–57).  The parole examiner found probable cause that a violation of supervision occurred, and recommended a final hearing (*id.* at 57–69).

A final revocation hearing was held on January 17, 2008 (*see* Ex. D at 76–82).  The hearing examiner found Petitioner guilty of a willful and substantial violation of  Condition 7, as described *supra*, and recommended revocation of Petitioner's parole and his return to prison (*id.*).  The Parole Commission revoked Petitioner's parole based upon the determination of the hearing examiner that he violated condition 7 of his parole by "failing to obey all laws, ordinances or statutory conditions of Parole, in that on or about August 15, 2007, in Hillsborough County, Florida, he did unlawfully touch, strike or cause bodily harm to Danielle Yvonne Flowers, against the will of said victim" (Ex. E).  This revocation is the subject of the instant federal habeas action.

Petitioner sought review of the Parole Commission's decision in the Florida courts by filing a petition for writ of habeas corpus in the Circuit Court in and for Gulf County, Florida, Case No.

08-229-CA (Ex. F).  On October 6, 2008, the state court denied the petition (Ex. L).  Petitioner sought review of the decision by filing a petition for writ of certiorari in the Florida First District Court of Appeal, Case No. 1D08-5144 ("First DCA") (Ex. M).  The First DCA denied the petition on the merits on April 6, 2009, with the mandate issuing May 22, 2009 (Exs. Q, T).  Nelson v. Florida Parole Comm'n, 7 So. 3d 1102 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on June 23, 2009 (doc. 1).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neeley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

      If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786).   Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the

Supreme Court.  *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at \*18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* <u>Gill</u>, 2010 WL 609844, at \* 18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the

petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III.    PETITIONER'S CLAIM

Ground One:  "Petitioner is deprived of liberty for a crime that never occurred; constituting a violation of federal laws."

Petitioner contends the evidence was insufficient to support the parole revocation (doc. 1 at 5–12).[4]  He argues the Parole Commission revoked his parole because he allegedly committed the crime of battery upon Danielle Flowers; however, Ms. Flowers testified at the revocation hearing that Petitioner never struck her or caused bodily injury (*id.*).  She additionally testified she never told Deputy Jose Sanchez (the officer who arrested Petitioner for battery) that Petitioner struck her or caused bodily injuries (*id.*).  Petitioner states the parole examiner reviewed photographs of minor bruises on Ms. Flowers's body; however, Ms. Flowers testified the bruises were the result of her having slipped and fallen over a vase, and that she explained this to Deputy Sanchez (*id.*).  Petitioner argues the parole examiner relied solely upon the following evidence:  (1) Deputy Sanchez's testimony as to statements allegedly made by Ms. Flowers,[5] (2) the arrest report/affidavit of Deputy Sanchez containing Ms. Flowers's alleged statements, (3) photographs of bruises on Ms. Flowers, and (4) the probation violation report (*id.*).  He contends this evidence was insufficient to support the revocation; therefore, the Parole Commission's decision was arbitrary, capricious, and blatantly unlawful (*id.*).

The Parole Commission contends Petitioner's claim is not reviewable under federal habeas, because his argument is an issue of purely state law, despite his couching it in terms of federal due process (doc. 15 at 8–12 (citing Simpson v. Fla. Parole Comm'n, Case No. 8:04-cv-1808-T-17EAJ

---

[4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[5] Petitioner expressly states he is not challenging the admissibility of Deputy Sanchez's testimony regarding Ms. Flowers's statements on hearsay grounds (*see* doc. 1 at 12).

(M.D. Fla. 2006), <u>Ellard v. Fla. Parle Comm'n</u>, Case No. 8:05-cv-316-R-17MAP (M.D. Fla. 2006), and <u>Funk v. Fla. Parole Comm'n</u>, Case No. 8:07-cv-2329-T-30EAJ (M.D. Fla. 2009))).  Therefore, the Commission argues, the petition should be denied for lack of federal jurisdiction (*id.* at 12 (citing <u>Johnson v. David</u>, Case No. 8:05-cv-139-T-17TBM (M.D. Fla. 2006))).

The Parole Commission additionally contends Petitioner's parole was properly revoked (doc 15 at 12–22).  The Commission argues Florida law does not require a conviction of a new crime in order to revoke supervision; the fact finder may determine, independent of a formal conviction, if the parolee violated the law (*id.* at 17–22).  Under Florida law, the state court may not reevaluate the credibility of evidence or reweigh conflicting evidence before the administrative agency; instead, the court may only determine whether the record demonstrates that the fact finder's findings were supported by competent substantial evidence (*id.*).  The fact finder may determine, independent of a formal conviction, that a law has been violated, including a determination that a specific intent element was satisfied (*id.* at 14, 17).  Even if a parolee has been acquitted of a new law violation, the fact finder in a parole revocation hearing may determine that a parole violation occurred based on the same conduct (*id.*).  Further, a finding that the violation was willful is factual in nature (*id.*).  The Parole Commission argues that in Petitioner's case, the hearing examiner believed Deputy Sanchez's testimony over Petitioner's and the victim's (*id.*).  Further, Deputy Sanchez's hearsay testimony as to Ms. Flowers's statements was corroborated by his direct observations of the victim's injuries and the photographs of those injuries (*id.*).  The Parole Commission contends this was competent substantial evidence supporting the Commission's decision (*id.*).

In Petitioner's reply, he argues his claim rises to the level of a Fourteenth Amendment violation, because he was deprived of his liberty without due process of law (doc. 19 at 1–4, 7–8). He additionally argues Florida law requires that an officer's hearsay testimony be corroborated to constitute sufficient evidence to support a revocation, but in his case, Deputy Sanchez's hearsay testimony was not corroborated (*id.* at 5–8 (citing <u>Merritt v. Crosby</u>, 893 So. 2d 598 (Fla. 1st DCA 2005) and <u>Arndt v. State</u>, 815 So. 2d 674 (Fla. 5th DCA 2000))).

        1.     Record of Parole Revocation Proceedings

The hearing examiner's written summary of the evidence adduced at the final parole hearing is included in the record (Ex. D at 76–82).  Deputy Sanchez of the Hillsborough County Sheriff's

Office testified he was dispatched to a call from Petitioner at 8:06 a.m. on August 15, 2007, related to problems with his girlfriend, Danielle Flowers (*id.* at 78).  Petitioner alleged Ms. Flowers had mental health problems, and he wanted her to move out of their apartment (*id.*).  Petitioner was advised he would have to utilize the legal eviction procedure to remove Ms. Flowers from the residence (*id.*).  Deputy Sanchez testified that approximately two hours later, he dispatched to an apartment complex on 13404 Monte Carlo Court, to respond to an anonymous report that a female was screaming for help inside apartment #48 (*id.*).  Deputy Sanchez testified he responded to the apartment complex and observed Petitioner standing in the parking lot (*id.*).  Sanchez observed that Petitioner was agitated, sweating, and shirtless (*id.*).  Sanchez testified he called for a back-up, and when the second deputy arrived, he (Sanchez) went to apartment #48 (*id.*).  He testified that as he was ascending the stairs, he observed debris on the sidewalk and just inside the doorway of the apartment (*id.*).  Deputy Sanchez testified he knocked on the door and made contact with a female occupant, who identified herself as Danielle Flowers (*id.*).  Sanchez testified Ms. Flowers advised him that Petitioner had struck her numerous times with a belt, and she had defended herself with a bar-b-que fork she had been holding while trying to cook (*id.*).  Deputy Sanchez testified he photographed Ms. Flowers' injuries and the crime scene (*id.*).  He testified Ms. Flowers wrote a statement of what had happened, but she advised she did not want to press charges against Petitioner (*id.*).  Sanchez testified he informed her that based upon his observations, he would be arresting Petitioner for battery-domestic violence (*id.*).  Deputy Sanchez arrested Petitioner and transported him to the local jail (*id.*).  Upon their arrival at the jail, Sanchez learned that Petitioner was on parole supervision, so he added a charge of violation of parole to the battery charge (*id.*).

Petitioner cross-examined Deputy Sanchez.  Petitioner asked him what Ms. Flowers stated as the cause of her injury, and Sanchez responded, "She said you tried to force her to leave.  You took off your belt and struck her.  She told me you were still wearing the belt you hit her with." (Ex. D at 78).  Petitioner asked Sanchez whether he determined that the belt Petitioner was wearing matched the victim's injuries, and Sanchez responded, "Yes." (*id.* at 78–79).  Deputy Sanchez admitted he did not have a degree in forensic science, but he stated he made that determination based upon Ms. Flowers's statements and his observation that the belt Petitioner was wearing matched the victim's wounds (*id.* at 79).

Danielle Flowers also testified at the revocation hearing.  She testified that on August 15, 2007, she was cooking in the kitchen and had a fork in her hand (Ex. D at 79).  Ms. Flowers testified her injuries were caused when she accidentally tripped over a vase on the floor (*id.*).  She stated she heard someone coming upstairs and saw a law enforcement officer in the hallway (*id.*).  Ms. Flowers testified she told the deputy that Petitioner never touched her, hurt her, or assaulted her, and that he gave her money and took care of her (*id.*).  She testified the first thing she told the deputy was that she fell over the vase (*id.*).  She said the deputy then went downstairs and returned with Petitioner's belt (*id.*).  The deputy told her the belt matched her injuries (*id.*).  Ms. Flowers testified the deputy wrote a statement, but she denied ever signing a statement that Petitioner injured her (*id.*).  She testified she signed the paper the deputy wrote because the deputy instructed her to do so (*id.*).  She stated the deputy told her Petitioner would get out of jail the next day (*id.*).  Ms. Flowers testified she asked the prosecutor not to prosecute Petitioner (*id.*).  She testified Petitioner was still paying rent on the apartment she was living in, and she appreciated Petitioner's taking care of her (*id.*).  In response to specific questioning, Ms. Flowers testified, "The deputy is lying.  I never made the statement to him that Nelson hit me." (*id.*).

At the revocation hearing, Petitioner argued there was no proof he committed the battery (Ex. D at 80).  He argued he was never prosecuted for the battery charge (*id.*).  He denied committing the battery (*id.*).

The hearing examiner received several exhibits into evidence, including the following:  (1) Hillsborough County arrest report, (2) entry of nolle prosequi filed by the Hillsborough County prosecutor in the criminal case filed against Petitioner for battery, and (3) thirteen photographs (Ex. D at 76, *see also* Ex. J).

The hearing examiner found that Petitioner was guilty of unlawfully touching, striking, or causing bodily harm to Danielle Flowers against her will August 15, 2007 (Ex. D at 80).  In making this finding, the hearing examiner found Deputy Sanchez's testimony credible that (1) he responded to an emergency call at Petitioner's apartment complex and discovered Danielle Flowers inside Petitioner's residence, and (2) Ms. Flowers was crying and upset and advised him that Petitioner had hit her with a belt causing visible welts on her hand, arm, and thigh.  The hearing examiner also based her decision upon the arrest affidavit and photographs taken by Deputy Sanchez of Ms.

Flowers' injuries (*id.* at 80–81).  The hearing examiner expressly found that Ms. Flowers' testimony was not credible (*id.* at 81)

The Parole Commission adopted these findings, including the hearing examiner's credibility determinations.  The Commission concluded that the findings were supported by competent, substantial evidence (Ex. E).  Based upon these findings, the Parole Commission determined that the preponderance of the evidence showed that Petitioner violated Condition 7 of his parole, which required him to obey all laws, by unlawfully touching, striking, or causing bodily harm to Ms. Flowers (*id.*).

    2.  Clearly Established Supreme Court Law

As an issue of federal law, Petitioner's claim of insufficiency of the evidence derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  Although the Supreme Court has not specifically held that the Due Process Clause requires sufficiency of the evidence in probation or parole violation proceedings, it has suggested this.  *See* Black v. Romano, 471 U.S. 606, 615–16, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process. . . . The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."); *see also* Douglas v. Buder, 412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973) (probation revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated). However, as recognized by the Eleventh Circuit, the Supreme Court has not established that due process in a parole or probation revocation proceeding requires proof beyond a reasonable doubt that the parolee committed the alleged violation.  *See* United States v. Taylor, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts; all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation).  Indeed, the Supreme Court has not specifically stated the standard of proof that must be met in probation or parole revocation proceedings to satisfy the Due Process Clause.  *See, e.g.*, Black, 471 U.S. at 615–16 ("Bearden v. Georgia[, 461 U.S. 660, 666, and n.7, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)] recognized substantive limits on the automatic revocation of

probation where an indigent defendant is unable to pay a fine or restitution.  We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context."); Douglas v. Buder, 412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973) (probation revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated).

Under Florida law, it is the hearing examiner's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact.  Heifetz v. Department of Business Regulation, 475 So. 2d 1277, 1281 (Fla. 1st DCA 1985).  The Parole Commission is bound to accept the hearing examiner's findings if the findings are supported by competent, substantial evidence.  *See* Tedder v. Fla. Parole Comm'n, 842 So. 2d 1022, 1025 (Fla. 1st DCA 2003) (Commission is not at liberty to reweigh the evidence considered by the hearing examiner where the examiner's finding is supported by competent, substantial evidence); *see also* Richardson v. Fla. Parole Comm'n, 924 So. 2d 908 (Fla. 1st DCA 2006) (Commission improperly re-weighed evidence in rejecting examiner's conclusions instead of determining whether competent, substantial evidence supported examiner's findings).  If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other.  Tedder, 842 So. 2d at 1025.

3.      Federal Review of State Court Decision

In Petitioner's state habeas petition, Petitioner challenged the sufficiency of the evidence to support the parole revocation (Ex. F).  In its written opinion, the state court determined that under state law, whether there was a willful violation of a substantial condition of supervision was a factual determination to be made by the hearing officer, and state law did not permit the court to re-weigh the facts (Ex. L).  The state court determined the hearing examiner found as fact that Deputy Sanchez's testimony was credible, and Ms. Flowers's testimony was not credible (*id.*).  The state court also determined that the hearing examiner received sufficient evidence that an assault occurred (*id.*).  The court thus determined the record contained competent, substantial evidence to support the hearing examiner's factual findings, and the Parole Commission did not abuse its discretion by finding Petitioner guilty of violating the conditions of his parole and revoking his supervision (*id.*).

Initially, this federal court must abide by the state court's interpretation of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Therefore, this court is bound by the state court's determination that under Florida law, the state court may not review the hearing examiner's credibility determinations or factual findings; rather, the court may only determine whether the Parole Commission abused its discretion by revoking Petitioner's supervision.

Additionally, Petitioner failed to demonstrate that the state court's decision was contrary to clearly established federal law.  Although the state court did not specifically cite to any United States Supreme Court case for the standard to be applied in resolving Petitioner's sufficiency of the evidence claim, a state court is not required to cite United States Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002). Petitioner has not shown that the state court reached an opposite conclusion from the United States Supreme Court on a question of law.  Furthermore, Petitioner has not identified any United States Supreme Court case with a set of materially indistinguishable facts that was decided differently from his case, nor is the court aware of any such case.  Therefore, Petitioner has failed to show that the state court's decision was contrary to Supreme Court law.

Petitioner has additionally failed to show that the state court's decision was an unreasonable application of clearly established federal law.  As discussed *supra*, the Supreme Court has not established the standard of proof required to support a revocation of parole supervision. Furthermore, the record contains evidence to support the Parole Commission's determination that Petitioner violated the condition of his parole requiring that he obey the law.  The basis for the revocation was Petitioner's unlawfully touching, striking or causing bodily harm to Danielle Flowers.  The Florida battery statute provides the offense of battery occurs when a person (1) actually and intentionally touches or strikes another person against the will of the other, or (2) intentionally causes bodily harm to another person.  Fla. Stat. § 784.03 (2001).  The hearing examiner heard firsthand the testimony of Deputy Sanchez and Ms. Flowers, and was able to observe their demeanor while they testified, which enabled the examiner to attach significance to

Deputy Sanchez's testimony based upon his perceived credibility, and attach no significance to the testimony of Ms. Flowers based upon her perceived lack of credibility.  Deputy Sanchez testified that Ms. Flowers told him Petitioner hit her with a belt.  He also testified as to his personal observations of Ms. Flowers's physical injuries, including that the shape of her injuries was consistent with the shape of Petitioner's belt buckle.  Additionally, the record contained photographs of Ms. Flowers's injuries.  In light of the hearing examiner's findings and the record before the Parole Commission, the state court's determination that there was competent, substantial evidence to support the revocation was not unreasonable.  *See* Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (on review of sufficiency of the evidence claim, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found evidence to support the charged violation under the applicable standard of proof).

Petitioner has failed to demonstrate that the state court's adjudication of his sufficiency of the evidence claim was contrary to or an unreasonable application of Supreme Court precedent. Therefore, he is not entitled to federal habeas relief.


IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is

an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3<u>rd</u> day of October 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**